UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO VALDEZ,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>DR. ZHANG *et al.*,<br><br>　　　　　　　　　Defendants. | Case No.: 20-CV-736 JLS (WVG)<br><br>**ORDER (1) GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AND (2) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF Nos. 64, 64-1) |

　　　Presently before the Court are Defendants R. Zhang, B. Martin, and L. Schobelock's (collectively, "Defendants") Motion for Summary Judgment ("Mot.," ECF No. 64) and Request for Judicial Notice in support of the same (ECF No. 64-1). Plaintiff Ricardo Valdez filed a Response in Opposition to ("Opp'n," ECF No. 86), and Defendants filed a Reply in Support of ("Reply," ECF No. 87), the Motion for Summary Judgment. Having

/ / /

/ / /

carefully considered the Parties' briefing and the law, the Court **GRANTS** Defendants' Request for Judicial Notice and **GRANTS** Defendants' Motion for Summary Judgment.[1]

## BACKGROUND

Plaintiff is currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD") and is proceeding pro se and *in forma pauperis* with a First Amended Complaint ("FAC," ECF No. 8) filed pursuant to 42 U.S.C. § 1983. Generally, Plaintiff contends that the withholding of certain pain medications by physicians at RJD violated his Eighth Amendment rights. *See* FAC.

Plaintiff suffers from chronic pain and has a long history of medical treatment at RJD. *See* Declaration of R. Zhang, M.D. in Support of Defendants' Motion for Summary Judgment ("Zhang Decl.," ECF No. 64-5). Defendant Zhang, a physician at RJD, has treated Plaintiff since August 20, 2014. *Id.* ¶ 2. At their first appointment, Zhang noted that prior pain medications—including Tylenol, nortriptyline, and Trileptal—had failed to alleviate Plaintiff's chest pain. *Id.* ¶ 5. Zhang put Plaintiff on a trial of 150 mg of Lyrica daily for a week, which he later increased to twice a day. *Id.*

On October 6, 2017, Plaintiff saw Zhang following a consultation with a cardiologist. FAC at 90–91.[2] At that time, Plaintiff was taking 300 mg of Lyrica twice daily for pain. Zhang Decl. ¶ 9. Due to Plaintiff's complaints of stiffness from pain, Zhang started Plaintiff on a trial of 30 mg of Cymbalta. *Id.*

On November 6, 2017, Plaintiff complained to Zhang that the Cymbalta was not helping his chronic pain. FAC at 127. Zhang suggested nortriptyline for pain and sleep, but Plaintiff refused it. *Id.* Zhang continued the Lyrica prescription with Tylenol as needed

///

---

[1] Although this motion was referred to United States Magistrate Judge William V. Gallo pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and Recommendation nor oral argument is necessary for the disposition of this matter. *See* S.D. Cal. CivLR 72.1(d).

[2] Throughout this Order, pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

for Plaintiff's back and chest pain. *Id.* Zhang also made a referral to neurosurgery for further recommendations and to determine other explanations for Plaintiff's pain. *Id.*

On May 7, 2018, Zhang ordered a scan of Plaintiff's lower right extremities due to Plaintiff's complaints of pain. *Id.* at 88–89. Plaintiff refused to complete the scan procedures, stating that his pain had improved. Zhang Decl. ¶ 12. Plaintiff's pain was described as controlled with Lyrica and Tylenol PM. *Id.* Zhang noted that Plaintiff had "recently tested positive for amphetamine" on February 7, 2018, but Plaintiff reported that he had "since . . . stopped using drugs." *Id.*

On October 5, 2018, Eva Bradley, a nurse at RJD who is not a party to this action, reported that Plaintiff was upset he did not receive certain medications and was uncooperative to the extent that an EKG could not be completed. FAC at 87. Plaintiff told Bradley that his chest pain during the appointment was a "9 [out of] 10," but Bradley noted that he was sitting on a chair relaxed without signs of distress and conversing with her without shortness of breath. *Id.* Bradley authorized a one-time dose of 100 mg of tramadol. *Id.*

On December 5, 2018, Plaintiff underwent surgery after tests ordered by Zhang showed that Plaintiff had developed significant coronary blockage. Zhang Decl. ¶ 14. During the surgery, doctors removed fractured sternal wires suspected to be the source of Plaintiff's chest pains. *Id.*

On December 12, 2018, Plaintiff underwent a second surgery intended to open up blocked arteries and improve blood flow to the heart. *Id.* On December 17, 2018, Dr. Erica Goyal documented that Plaintiff was experiencing post-operative pain, for which she prescribed Plaintiff 15 mg of morphine. FAC at 84–86; Zhang Decl. ¶ 15. Dr. Goyal documented California Correctional Health Care Services' ("CCHCS") protocols were to be consulted regarding pain management and follow-up care. FAC at 84–86; Zhang Decl. ¶ 15.

/ / /

/ / /

On December 22, 2018, Zhang examined Plaintiff's surgery incision, noted some mild redness, and ordered an x-ray, antibiotics, and a topical cream to help with the redness. FAC at 81–84; Zhang Decl. ¶ 16. Plaintiff complained of severe pain in the area where surgery was performed, which worsened with movement or at night when he tried to sleep. FAC at 81–84; Zhang Decl. ¶ 16. Zhang prescribed Plaintiff 15 mg of extended-release morphine and planned to discontinue Plaintiff's tramadol prescription. FAC at 81–84; Zhang Decl. ¶ 16. Around this time, Zhang received reports that Plaintiff had tested positive for recent alcohol use. Zhang Decl. ¶ 16.

On January 18, 2019, Zhang met with Plaintiff to address complaints of chest pain. FAC at 78–81. Zhang noted the prior positive test for amphetamines on February 7, 2018, and that the serum drug screen performed on December 27, 2018, was negative for opiates, despite the fact that Plaintiff had been prescribed morphine. *Id.* Due to concerns of drug diversion (giving medication to others, *see* ECF No. 64-4 ¶ 4), Plaintiff's morphine prescription was stopped and replaced with 100 mg of tramadol, twice a day, for his chest, back, and knee pain, FAC at 78–81. Zhang discussed tapering Plaintiff's tramadol prescription to 50 mg per day, beginning two weeks from the date of the appointment. *Id.* Plaintiff continued with Lyrica at this time. *Id.*

On February 4, 2019, Plaintiff told Zhang that the medications prescribed by his cardiothoracic surgeon, Dr. Gramin, following his surgery—tramadol, Lyrica, and escitalopram—were not helping his with his pain. FAC at 75–78; Zhang Decl. ¶ 18. Zhang also learned that Plaintiff had missed a drug screen test set for January 23, 2019, which had been arranged to check Plaintiff's tramadol level. FAC at 75–78; Zhang Decl. ¶ 18. Plaintiff told Zhang that he was not let out of his cell for the test. FAC at 75–78; Zhang Decl. ¶ 18. Zhang re-ordered the test and continued Plaintiff's prescription of Lyrica, but he did not make a new order for tramadol. FAC at 75–78; Zhang Decl. ¶ 18.

On March 13, 2019, Zhang examined Plaintiff to assess the appropriateness of continuing Plaintiff on the medications prescribed by Dr. Garmin. FAC at 73–75. Zhang's notes from this appointment indicated his concern that Plaintiff was diverting his tramadol,

because his blood panel from a month prior was negative for serum tramadol. *Id.* Despite Plaintiff's apparent failure to take the tramadol prescribed to him, Plaintiff requested that his tramadol dosage be increased and again complained of chest pain. *Id.* Zhang physically examined Plaintiff, noting that his surgical wound was healing and his chest pain was stable. *Id.* Due to Plaintiff's suspected tramadol diversion and stage of healing, Zhang decreased Plaintiff's tramadol prescription to once daily and ordered a re-test for the drug screen. Zhang Decl. ¶ 19.

About a week later, on March 21, 2019, Plaintiff visited Defendant Martin, a physician and surgeon at RJD, after falling from his seated walker and injuring his neck. Declaration of Dr. Benny Martin in Support of Defendants' Motion for Summary Judgment ("Martin Decl.," ECF No. 64-3) ¶ 8. Martin ultimately diagnosed Plaintiff with a cervical sprain. *Id.* Martin noted that Plaintiff's injury may have been self-inflicted for "secondary gain." *Id.* This assessment was based on the manner in which Plaintiff "described the fall, his history of requesting an increase in opiate based medications, his history of diversion and abnormal drug screens, and Dr. Zhang and other physicians['] recent decisions to taper more addictive medications from use." *Id.* Plaintiff requested an increased tramadol prescription for his pain, but Martin did not fulfill Plaintiff's request. *Id.*

Zhang recommended on March 26, 2019, that Plaintiff be tapered off tramadol and Lyrica, as Plaintiff's chest pain was relatively mild and the medications posed health risks to Plaintiff. FAC at 69–72; Zhang Decl. ¶ 20. Tylenol was offered as needed for any remaining pain. FAC at 69–72; Zhang Decl. ¶ 20. Zhang advised Plaintiff to enroll in substance abuse classes, stretch as much as his pain permitted, and use relaxation and meditation techniques to help with his chronic back pain. FAC at 69–72; Zhang Decl. ¶ 20. Shortly after Plaintiff's pain medication was discontinued, Plaintiff filed a health care grievance against "[a]ll doctors" involved in the decision to discontinue the medication. FAC at 31. Plaintiff was interviewed by Defendant Schobelock, a registered nurse at RJD, about his grievance on June 24, 2019. *Id.* At both the first and second level of review, Plaintiff's grievance was denied. *Id.* at 28–30, 35–37.

Plaintiff initiated the instant action on April 16, 2020, alleging the discontinuation of his pain medication constituted a violation of his Eighth Amendment rights. *See* ECF No. 1. The initial Complaint was dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See* ECF No. 5. Plaintiff filed the FAC on August 7, 2020. *See* FAC. Defendants filed the instant Motion for Summary Judgment on January 21, 2022. *See* Mot.

## DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

Defendants request that the Court take judicial notice of the following exhibits: (A) the CCHCS Pain Management Guide Part 2, and (B) the Health Care Department of Operations Manual § 3.5.4(c)(1)(B). ECF No. 64-1; ECF No. 64-6. Plaintiff does not oppose Defendants' request. *See generally* Opp'n.

Federal Rule of Evidence 201(b) provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Under Federal Rule of Evidence 201, the Court may take judicial notice of state agency records not subject to reasonable dispute. *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1223 n.2 (9th Cir. 2004).

The Court finds taking judicial notice of Exhibits (A) and (B) is appropriate, as they are official records of the California Department of Corrections and Rehabilitation and are not subject to reasonable dispute. *See Arellano v. Santos*, No. 318CV02391BTMWVG, 2021 WL 5140187, at *21 (S.D. Cal. Nov. 4, 2021) (judicial notice taken of the CCHCS Pain Management Guide Part 2 and the Health Care Department of Operations Manual § 3.5.4(c)(1)(B)). Accordingly, the Court **GRANTS** Defendants' Request for Judicial Notice in its entirety.

/ / /
/ / /
/ / /
/ / /

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. Legal Standard

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322–23. If the moving party fails to bear its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his or her pleading, but must "go beyond the pleadings and by [his or] her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted).

If the nonmoving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir.

2001). The court does not engage in credibility determinations or the weighing of evidence; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255. Further, the district court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir. 1980).

## II. Discussion

### A. Pro Se Prisoner as Nonmoving Party

When the nonmoving party is proceeding pro se, the court has a duty to consider "all of [the nonmovant's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the nonmovant] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 922–23 (9th Cir. 2004). A verified complaint may be used as an opposing affidavit under Rule 56 to the extent that it is based on personal knowledge and sets forth specific facts that are admissible in evidence. *McElyea v. Babbitt*, 833 F.2d 196, 197–98 (9th Cir. 1987) (per curiam). To verify a complaint, the plaintiff must swear or affirm that the facts in the complaint are true "under the pains and penalties" of perjury. *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995).

On August 7, 2020, Plaintiff filed his operative pleading, the FAC. *See* FAC. The FAC is not verified. *Id*. In the FAC, however, Plaintiff filed a request for appointment of counsel stating that "[h]e can't write or read," "barely speaks English," and was relying on assistance from a fellow inmate in this litigation. *Id*. at 11. Additionally, Plaintiff's Opposition consistently refers to his FAC as "Verified FAC." *See* Opp'n. Plaintiff's Opposition also includes a statement of verification: "Verified FAC I declare under Penalty of Perjury of laws of California that everything stated on FAC (ECF 8) is true and correct as to my own personal knowledge." *See* Opp'n at 16.

As Plaintiff is proceeding pro se and swore to the accuracy of the FAC via his Opposition, the Court is "reluctant to hold the un-verified status of the [FAC] against [Plaintiff]." *See Ochoa v. Von Lintig*, No. 19-CV-346-MMA (JLB), 2021 WL 5303779, at *4 (S.D. Cal. Nov. 15, 2021). Accordingly, the Court will construe the operative FAC as verified and consider it as evidence. *Cf. Franklin v. Smalls*, No. 09CV1067-MMA (RBB), 2013 WL 941569, at *1 (S.D. Cal. Mar. 8, 2013) (construing Plaintiff's Fourth Amended Complaint as verified, despite the fact that it was not, because earlier versions of the Complaint were verified).

### B. *Deliberate Indifference*

"Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (internal quotation marks and citations omitted). "Th[e] second prong—defendant's response to the need was deliberately indifferent—is satisfied by (a) a purposeful act or failure to respond to plaintiff's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (internal citations omitted).

An "inadvertent [or negligent] failure to provide adequate medical care" alone does not state a claim under § 1983. *Id.* at 1096 (citing *Estelle*, 429 U.S. at 105). An inmate must "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (internal citation omitted). To satisfy this subjective component of deliberate indifference, an inmate must show that prison officials "kn[ew] of and disregard[ed]" a substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837, 842 (1994). Under this standard, the prison official must not only "be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." *Toguchi v. Chung,* 391 F.3d 1051, 1057 (9th Cir. 2004) (citing to *Farmer,* 511 U.S. at 837).

Here, Defendants do not dispute the existence of Plaintiff's serious medical needs. *See generally* Mot. Consequently, the Court turns to whether Defendants Zhang and Martin were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment.

Plaintiff claims that Defendants Zhang and Martin were deliberately indifferent to his serious medical needs when they tapered, discontinued, or denied certain pain medication. *See generally* Opp'n. Defendants argue that Plaintiff's treatment by Zhang and Martin was medically acceptable under the circumstances and that they did not deny or discontinue his prescriptions in conscious disregard of an excessive risk to Plaintiff's health. *See* Mot. at 20–27. Defendants argue the undisputed facts demonstrate that Plaintiff received nearly constant care, including pain management when needed, despite documented suspicions as to the veracity of Plaintiff's complaints of pain. *Id.*

### 1. Defendant Zhang

Viewing the facts in the light most favorable to Plaintiff, Plaintiff has failed to make a sufficient showing to establish Zhang was deliberately indifferent to Plaintiff's serious medical needs. Plaintiff has put forth no evidence that Zhang's prescriptions were made in the face of a risk of serious injury to Plaintiff of which Zhang was aware yet chose to ignore. Rather, the record shows that Zhang provided Plaintiff with continuous treatment over several years, carefully altering Plaintiff's pain medication in response to Plaintiff's medical needs and suspected drug abuse.

Plaintiff's FAC accuses Zhang of restricting Plaintiff's access to certain medications as a means of subjecting Plaintiff to unnecessary pain and suffering. FAC at 3–12. The record before the Court, however, undermines this allegation. Between March 2016 and August 2019, Zhang met with Plaintiff more than a dozen times and issued prescriptions for Lyrica, Nortriptyline, Cymbalta, acetaminophen with codeine, morphine, tramadol, and

amitriptyline, in addition to the myriad of other drugs Plaintiff required for his various ailments. *See* Zhang Decl. ¶¶ 5–22. Zhang also requested various tests to determine the source of Plaintiff's chronic pain and made referrals to other doctors in response to Plaintiff's medical condition. *See id.* ¶¶ 9, 10, 14, 17, 23. The record also reflects that Zhang's decisions were made in accordance with Plaintiff's comorbidities and suspected drug abuse. *Id.* Accordingly, Plaintiff has failed to show "a purposeful act or failure to respond to plaintiff's pain or possible medical need" or "harm caused by the indifference." *See Jett*, 439 F.3d at 1096

Moreover, Zhang's prescriptions reflect CCHCS policy rather than a malicious effort to subject Plaintiff to unnecessary pain by discontinuing Plaintiff's medication. Under CCHCS guidelines, "[o]pioids are not the preferred treatment for chronic pain. Non-pharmacologic therapies and non-opioid therapies are preferred for managing chronic non-cancer pain." ECF No. 64-4 at 4; FAC at 29; *see also Gibson v. Vanjani*, No. 17-CV-01705-EMC, 2018 WL 4053458, at *8 (N.D. Cal. Aug. 24, 2018) ("The CCHCS policy must be taken into consideration in evaluating whether individual Defendants acted with deliberate indifference."). Zhang attests that "[a]ny decisions to forego the provision of pain medication to Valdez w[ere] made with his best health interests in mind . . . and compliant with prison medical policies and its Care Guide: Pain Management—Non-Opioid Therapies and related documentation regarding best practices for dispensing pain medications in an institutional setting." Zhang Decl. at ¶ 29.

For example, the record shows that Zhang's decision in January 2019 to discontinue Plaintiff's morphine prescription and replace it with tramadol was motivated by evidence of Plaintiff's drug diversion and use of amphetamines. FAC at 78–81. While Plaintiff claims that Zhang lied about the results of the drug screen so that Zhang could block Plaintiff from "such effective medications," *see* Opp'n at 8, this allegation mischaracterizes Zhang's medical decision, which was to simply replace one type of pain medication with another. Moreover, Plaintiff's prescriptions for tramadol and Lyrica were only discontinued after his chest pain had stabilized and strong evidence had materialized that

Plaintiff was at risk of abusing his pain medication. FAC at 29; Zhang Decl. ¶¶ 16–20. On April 5, 2019, shortly after the prescriptions were discontinued, Plaintiff "request[ed] to be placed back on his Lyrica and tramadol[] and became angry and raised his voice and told [Zhang] that he needed both medications" for his chronic pain. FAC at 68. Zhang explained that "due to [Plaintiff's] history of amphetamine abuse, also tramadol diversion, [t]he risk of taking tramadol as well as Lyrica, both of which ha[ve] addiction potentials, outweigh the benefit at this time." *Id.*; *see also id.* at 70 (March 26, 2019, report from Zhang noting the discontinuation of tramadol "due to the risk of death from tramadol diversion"). Rather than demonstrate deliberate indifference, the record shows that Zhang recognized a severe health risk to Plaintiff (opioid addiction and/or death) and adjusted his prescriptions accordingly.

"Because [Zhang] attempted to treat plaintiff's pain, [he] cannot be said to have been 'indifferent' to it," much less deliberately so. *DeGeorge v. Mindoro*, No. 17-CV-06069-LHK, 2019 WL 2123590, at *7 (N.D. Cal. May 15, 2019). Plaintiff may strongly disagree with Defendants over the proper course of treatment for his chronic pain. "However, a mere 'difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.'" *Toguchi,* 391 F.3d at 1058 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)) (finding the plaintiffs' argument that one medication was superior to another and therefore should not have been discontinued was a mere difference of medical opinion); *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) ("A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference."), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014); *see also Medina v. Barenchi*, No. 3:16-CV-2423-AJB-KSC, 2016 WL 7325508, at *5 (S.D. Cal. Dec. 16, 2016) ("[W]hile Plaintiff obviously disagrees with Defendants' assessment of his need for narcotics to treat his pain, his disagreement, without more, does not provide sufficient 'factual content' to plausibly suggest that . . . his treating physician . . . acted with deliberate indifference.").

"While [P]laintiff is certainly free to refuse specific medications or types of medication, he does not have a right to dictate what medications he will be prescribed." *Peacock v. Horowitz*, No. 213CV2506TLNACP, 2016 WL 3940346, at *7 (E.D. Cal. July 21, 2016). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Toguchi,* 391 F.3d at 1058 (quoting *Jackson*, 90 F.3d at 332). Plaintiff has failed to offer any evidence whatsoever that Zhang's clinical assessments and recommendations deviated from prevailing standards of care or that they were made in conscious disregard of an excessive risk to Plaintiff's health.

The Court concludes that no reasonable juror could find that Zhang was deliberately indifferent to a substantial risk of harm to Plaintiff. Consequently, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Defendant Zhang. *See, e.g.*, *O'Brien v. Saha*, No. 21-55326, 2022 WL 16945892, at *1 (9th Cir. Nov. 15, 2022) (affirming dismissal at summary judgment stage of inmate plaintiff's deliberate indifference claim premised on doctors' discontinuation of morphine and gabapentin where "the defendants based their decisions on the [CCHCS] guidance and on their independent medical opinion on the plaintiff's specific condition," which included a history of prior drug use and "suspicions of drug diversion").

2. *Defendant Martin*

The Court also finds that Plaintiff has failed to demonstrate that Martin was deliberately indifferent to Plaintiff's serious medical needs. Plaintiff alleges that Martin's denial of his request for an increased tramadol prescription amounts to deliberate indifference because it allowed his injury to go "untreated." ECF No. 8 at 16. Not only is this a misstatement of the law, but also it is a misstatement of the facts. It is a misstatement of the law because tapering and/or discontinuing an inmate's opioid prescription dosage in an effort to mitigate the risk of addiction and its attendant consequences does not constitute "indifference" or a "failure to respond" to an inmate's pain. *See Jett*, 439 F.3d at 1096. It

is a misstatement of fact because after his fall, Plaintiff was placed in a cervical collar, Martin examined him and ordered x-rays, and Martin ultimately diagnosed Plaintiff with a cervical sprain and opted to maintain his pain medication regimen. Martin Decl. ¶ 8. Accordingly, Plaintiff's alleged injuries did not go "untreated," as he claims.

Moreover, Plaintiff has offered no evidence that his treatment by Martin was inconsistent with CCHCS guidelines or otherwise out of sync with prevailing health care standards. Martin avers that "[a]ny decisions to forgo the provision of pain medication to Inmate Valdez [were] made with his best health interests in mind." Martin Decl. ¶ 12. As discussed above, pursuant to CCHCS guidelines, prison physicians like Martin must weigh the benefits and risks associated with prescribing addictive pain medication to chronic care patients. *Id.* ¶ 11. "The goal of [pain management] is to reduce pain and improve function while avoiding significant side effects and risks associated with stronger pain medications or surgery." FAC at 29; *see also* ECF No. 64-4 at 4; Martin Decl. at ¶ 11 ("Where the risk of providing pain medication outweighs the benefits to the patient, the chosen path is to avoid causing harm to the patient.").

Martin, like Zhang, was concerned that the risks posed by an increased dosage of tramadol would outweigh any potential benefits, especially in light of Plaintiff's history of "drug seeking behavior" and "the number of times that [Plaintiff] presented with complaints of pain for which there was no identifiable or discernible [cause]." Martin Decl. ¶ 10. Martin's recommendations aligned with those of Zhang and CCHCS guidelines, and Plaintiff has not presented any evidence that would lead the Court to second-guess Martin's medical recommendations. *Cf. White v. Napoleon*, 897 F.2d 103, 113 (3d Cir. 1990) ("The medical care of prison inmates is entrusted to prison doctors, to whose judgment and training courts owe substantial deference. Courts are ill-equipped to specify the medical [treatment] that must be provided to prison patients.").

Based on the foregoing, the Court finds that Defendant Martin did not arbitrarily refuse Plaintiff's request for an increased tramadol prescription. Martin's decision relied on guidance from the CCHCS and Plaintiff's medical history. Even viewing the evidence

in the light most favorable to Plaintiff, the Court concludes no reasonable juror could find that Defendant Martin was deliberately indifferent to a serious risk of harm to Plaintiff. Consequently, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Defendant Martin. *See O'Brien*, 2022 WL 16945892, at *1.

### C.  *Exhaustion*

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Pre-suit exhaustion of available remedies is mandatory. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Failure to exhaust is "an affirmative defense the defendant must plead and prove." *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007).

On summary judgment, it is Defendants' burden "to prove that there was an available administrative remedy, and that [Plaintiff] did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). The burden of production then shifts to Plaintiff "to come forward with evidence" showing either that he did properly exhaust his claims before filing suit, or that "there is something in his particular case that made the existing and generally available remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

The California Department of Corrections and Rehabilitation's ("CDCR") health care grievance process "provides an administrative remedy to patients . . . for review of complaints of applied health care policies, decisions, actions, conditions, or omissions that have a material adverse effect on their health or welfare." Cal. Code Regs. tit. 15, § 3999.226(a). The process is initiated by filing a CDCR 602 HC form within 30 days of the decision being grieved or when the inmate learns of the decision being grieved. Cal. Code Regs. tit. 15, §§ 3999.226, 3999.227(a)–(b). To exhaust a health care issue, inmates are required to "document clearly and coherently all information known and available to [them] . . . regarding the issue" and identify the staff member involved. *See* Cal. Code

Regs., tit. 15 § 3999.227(g)(1). "If the grievant does not have information to identify involved staff member(s), the grievant shall provide any other available information that may assist in processing the health care grievance." Cal. Code Regs. tit. 15, § 3999.227(g)(2). Such complaints are subject to two levels of review: an institutional level of review and a headquarters level of review. Cal. Code Regs. tit. 15, § 3999.226(a)(1). Health care grievances are subject to a headquarters disposition before administrative remedies are deemed exhausted. Cal. Code Regs. tit. 15, § 3999.226(g).

"A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)). Further, the Ninth Circuit has made clear that "[t]he grievance process is only required to "alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016). "[T]he primary inquiry is whether the grievance puts prison officials 'on notice of the nature of the wrong alleged,' such that it 'allow[s] prison officials to take appropriate responsive measures.'" *Harmon v. Lewandowski*, No. 220CV09437VAPMRWX, 2021 WL 6618681, at *9 (C.D. Cal. Nov. 30, 2021) (quoting *Reyes*, 810 F.3d at 658–59), *judgment entered*, No. 220CV09437MEMFMRWX, 2022 WL 1161142 (C.D. Cal. Mar. 31, 2022).

Accordingly, a decision at the headquarters level of appeal "exhausts all claims regarding the alleged constitutional violation . . . with regard to all prison officials named in the first level petition and all administrative reviewers." *See Estrada v. Macis*, No. 115CV01292AWISABPC, 2017 WL 1160613, at *1 (E.D. Cal. Mar. 29, 2017); *see id.* ("All those who directly reviewed Plaintiff's administrative appeal alleging ongoing constitutional violation may be appropriately named as defendants."). "The rationale for that rule is that the appellate examiners have the ability to end the ongoing constitutional violation alleged by the prisoner in the grievance; by not doing so the appellate reviewer may act in deliberate indifference to the continuation of the constitutional violation." *Id.*

Here, the Court finds that Plaintiff exhausted his administrative remedies as to his claim against Schobelock. Plaintiff filed three health care grievances during the relevant time-period: RJD HC 20001922, RJD HC 19001781, and RJD HC 19000781. *See generally* Declaration of S. Gates in Support of Defendants' Motion for Summary Judgment ("Gates Decl.," ECF No. 64-2). None of the grievances mention Schobelock. *See id*. Schobelock's name only appears in Plaintiff's appeal of RJD HC 19000781, which is the grievance Plaintiff filed on May 26, 2019, complaining of the discontinuance of his pain medication. FAC at 34. Yet, Schobelock interviewed Plaintiff for the institutional level response to grievance RJD HC 19000781. Declaration of L. Schobelock, R.N. in Support of Defendants' Motion for Summary Judgment ("Schobelock Decl.," ECF No. 64-4). Accordingly, Schobelock was involved in the administrative review of Plaintiff's grievance. Moreover, there was a final, headquarters-level decision on Plaintiff's grievance. Under Ninth Circuit precedent, therefore, Plaintiff exhausted administrative remedies as to his claims against Schobelock. To the extent Defendants argue for summary judgment on the basis of exhaustion, the Court **DENIES** the Motion.

### D.  *Qualified Immunity*

"Qualified immunity affords limited protection to public officials faced with liability under 42 U.S.C. § 1983, 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "To determine whether qualified immunity applies in a given case, we must determine: (1) whether a public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation." *Id*. These two prongs of the analysis need not be considered in any particular order, and both prongs must be satisfied for a plaintiff to overcome a qualified immunity defense." *Id*.

/ / /

/ / /

17

20-CV-736 JLS (WVG)

Here, Plaintiff has failed to overcome Defendant Schobelock's qualified immunity defense, as Plaintiff has not shown that Schobelock violated Plaintiff's Eighth Amendment rights. "The review assessment of a correctional medical official may constitute deliberate indifference only if the official was aware that the underlying challenged medical decision caused plaintiff further significant injury or the unnecessary and wanton infliction of pain, and the official purposefully failed to pursue an appropriate medical remedy." *O'Neal v. Lee*, No. 214CV1598GEBDBP, 2017 WL 495677, at *8 (E.D. Cal. Feb. 7, 2017) (internal citations omitted); *see also Valadez v. Sierra Cnty.*, 173 F. App'x 620, 621 (9th Cir. 2006) (concluding "district court properly granted summary judgment for defendants with respect to [appellant's] deliberate indifference claim because he failed to raise a triable issue of fact as to whether their treatment resulted in further significant injury or the 'unnecessary and wanton infliction of pain.'" (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir.1997))).

Plaintiff alleges that Schobelock was aware of his severe pain and that Zhang had discontinued his medication for nonmedical reasons. FAC at 14. He further alleges that Schobelock said she would rather "let [Plaintiff] keep on suffering" than have to prepare "paperwork saying Zhang was wrong." *Id.* These allegations, however, fall short of establishing a constitutional violation by Schobelock. First, the record shows that Zhang's decisions were based on legitimate medical reasons: Plaintiff's suspected drug diversion and abuse. *Supra* pp. 10–13. Second, even were that not the case, Plaintiff's allegations do not demonstrate that Schobelock was aware that Zhang's decisions had contributed to "further significant injury" beyond Plaintiff's chronic pain. Nor do Plaintiff's allegations show that Schobelock knew that Zhang's decisions resulted in the "unnecessary and wanton infliction of pain."

As discussed above, Zhang's discontinuance of Plaintiff's pain medications was supported by evidence of Plaintiff's misuse of his prescriptions. *Supra* pp. 10–13. After the interview with Plaintiff, Schobelock noted that Zhang's decision to discontinue

Plaintiff's tramadol "was based on the fact that on January 23, 2019 Valdez had 'refused to complete laboratories' to check his tramadol levels, and then on February 6, 2019 while prescribed tramadol, the levels were reported 'negative.'" Schobelock Decl. ¶ 4. These facts supported a concern that Plaintiff was diverting his prescribed medication to other inmates. *Id.* Moreover, Schobelock's decision was informed by primary care physician notes indicating Plaintiff's "desire was for pain medication for uses other than pain control" in light of his "history of refusal of testing as well as positive tests for controlled substances not prescribed." *Id.* Schobelock was entitled to rely on the judgment of Plaintiff's examining physicians, including Zhang, that continuing Plaintiff's pain medication prescriptions was inappropriate given such concerns. *Watkins v. Singh*, No. 2:13-CV-0416 KJM CKD, 2015 WL 136015, at *3 (E.D. Cal. Jan. 9, 2015) ("It is generally not deliberate indifference to defer to a specialist."), *subsequently aff'd sub nom. Watkins v. Bick*, 668 F. App'x 220 (9th Cir. 2016); *Coats v. Kimura*, No. 2:09-CV-1830 KJM KJN, 2013 WL 76288, at *20 (E.D. Cal. Jan. 4, 2013) (defendant administrative reviewers "were entitled to rely on plaintiff's treating psychiatrists' expertise in prescribing medications"), *report and recommendation adopted*, No. 2:09-CV-1830 KJM KJN, 2013 WL 1325792 (E.D. Cal. Mar. 30, 2013).

Finally, Plaintiff has failed to show that Schobelock "purposefully failed to pursue an appropriate medical remedy." *O'Neal*, 2017 WL 495677, at *8. In the face of Plaintiff's suspected drug diversion and abuse, Schobelock Decl. ¶ 4; Martin Decl. ¶ 10, the Court cannot say that Schobelock's recommendation of nonintervention was an inappropriate response to Plaintiff's medical needs.

In sum, Plaintiff has failed to provide any evidence showing that Schobelock's recommendation not to intervene "'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Toguchi,* 391 F.3d at 1058 (quoting *Jackson*, 90 F.3d at 332). Accordingly, the Court is not convinced that Schobelock's recommendations at the institutional-level review of Plaintiff's health care grievance stemmed from "deliberate indifference to [Plaintiff's]

health or safety." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (internal citation omitted).

As the Court has concluded that there was no underlying constitutional violation, Plaintiff has failed to overcome Defendant Schobelock's qualified immunity defense. Consequently, the Court **GRANTS** Defendants' Motion for Summary Judgement as to Defendant Schobelock on the ground of qualified immunity.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' Request for Judicial Notice (ECF No. 64-1) and **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 64). This order resolves all remaining claims as to all remaining parties. Accordingly, the Court instructs the Clerk of Court to enter judgment in favor of Defendants and terminate the case.

**IT IS SO ORDERED.**

Dated: March 27, 2023

Hon. Janis L. Sammartino
United States District Judge